Statement of the Case.
NICHOLES, C. J.
An affidavit was filed in the Second city criminál court of the parish of Orleans, charging the defendant with having on the 15th of November, 1902, willfully and unlawfully violated Act No. 34, p. 42, of 1902, relative to deserting and not providing for his wife, Mrs. Gaston Cueullu, and her children, Edward and Matkilde Cueullu, who were then, and were still, in destitute and necessitous circumstances, contrary to the *1090 form of the statute of the state of Louisiana in such eases made and provided, and against the peace and dignity of the same.
It appears from a transcript of the proceedings in the city court that, the defendant having appeared, the affidavit was read to him; that he pleaded “Not guilty,” reserving the right to withdraw his plea of not guilty, and filing such exceptions or demurrers as he might deem proper; that he was then placed under an appearance bond to appear before the court for preliminary examination on December 5, 1902, which continued till December 13th.
Counsel for defendant withdrew the plea of not guilty, and filed a demurrer to the complaint, to the effect that the matters therein contained, alleged, and set forth were not sufficient in law to compel him to answer the same, and he was not bound by the law of the land to do so, for this: that it was not charged that he had deserted or willfully neglected to provide for the support of his wife and children, and without just cause; and for the further reason that the pretended statute of the state of Louisiana known as “Act No. 34 of the Session of 1902,” which defendant was charged with violating, was obnoxious and violative of the provisions of the state Constitution, and was therefore unconstitutional, because:
(1) It violated article 22 of the Constitution of 1898, which commanded and required that the style of the laws of this state shall he, “Be it enacted by the General Assembly of the state of Louisiana.”
(2) It violated article 155 of the Constitution of 1898, in that it did not fix the maximum and minimum penalties for acts denounced and punished as misdemeanors.
(3) That the penalty provided for the violation of the provisions of said Act 34, p. 42, of 1902 is uncertain, indefinite, and not susceptible of execution.
(4) The subject-matter and provisions in said act of 1902 sought to be punished as a misdemeanor are essentially of a civil character, at most a quasi offense, which can be judicially inquired into, determined, and executed by civil process, and in a court of civil jurisdiction, and the Legislature is prohibited by the provisions of the Constitution from vesting such inquiry and execution in criminal courts, and the Second criminal court of New Orleans was yested exclusively with criminal jurisdiction.
The defendant prayed judgment, and that he be discharged in the premises.
Upon the argument of this demurrer, the district attorney was allowed to insert in the affidavit the words “without just cause,” and the transcript declares that the court, as to the other grounds, took same under advisement. The transcript declares that on the 17th of December “the court sustained the demurrer, dismissed the affidavit, and discharged the accused without date,” whereupon “the court granted the state an appeal to the Supreme Court.”
Opinion.
The appeal has been brought to this court under that clause of article 85 of the Constitution of 1898 which declares that the Supreme Court has appellate jurisdiction in all cases wherein a law 'of the state has been declared unconstitutional, and in such cases the appeal on the law and the facts is directly from the court in which the case originated to the Supreme Court. Act No. 34, p. 42, of 1902, with whose violation the defendant stood charged, was approved on June 19, 1902. The act denounced by the act was therein declared to be a misdemeanor, which should be punished by “a fine not exceeding one hundred dollars or by imprisonment in the parish prison not exceeding one year or both in the discretion of the court.”
By article 140 of the Constitution, there were created in the city of New Orleans two inferior criminal courts, to be known especially as the “First City Criminal Court” and the “Second City Criminal Court,” each of which should be presided over by one judge, and which should have jurisdiction within the territory prescribed for the trial and punishment, without juries, and subject to the appeal to the criminal district court, of all offenses against the state, where the penalty does not exceed six months’ imprisonment in the parish jail, or a fine of $300, or both. “In all other eases the judges of said courts shall have'jurisdiction as committing magistrates, with authority to bail or discharge.”
Article 139 declares that the criminal district court for the parish of Orleans shall have exclusive original jurisdiction for the trial and punishment of all offenses when the *1092 penalty of death, or imprisonment at hard labor, or imprisonment without hard labor, for any time exceeding six months, may be imposed, and appellate jurisdiction in all 'cases tried before the city criminal courts or recorders’ courts of New Orleans, which eases shall be appealable on the law and the facts, and shall be tried on the record and the evidence as made and offered in the lower court, provided that, until the General Assembly shall enact a law grading offenses, said court shall have general criminal jurisdiction extending to all cases arising in the parish of Orleans which is not vested by law or by the Constitution in some other court.
“Said court shall have general and supervisory jurisdiction over all inferior state and municipal courts in the parish of Orleans, and shall have authority to issue writs of habeas corpus in criminal and quasi criminal cases, and such other writs and orders as may be necessary or proper in aid of the jurisdiction conferred upon it.”
It will be seen from an examination of the articles of the Constitution cited that, if the city criminal court did not have jurisdiction for the trial of this case, the judge thereof, as a committing magistrate, did have jurisdiction over the complaint made, and that, if the city court did not have jurisdiction to try and dispose of the case upon its merits, the criminal district court itself had such jurisdiction; the Constitution contemplating that one or the other of these courts should have jurisdiction, and that no case should be left unprovided for.
The proceeding taken below in this case was evidently before the judge of the city court sitting as a committing magistrate, as the case stood fixed not for a trial, but for a preliminary examination, when the demurrer was filed. It is true that the transcript declares that the defendant was arraigned and pleaded “Not guilty,” but he withdrew this plea, and in lieu thereof filed the demurrer. As the city court had no jurisdiction to try this case on the merits, and the judge of the court did have jurisdiction as a committing magistrate, we are bound to assume that the so-cálled demurrer was presented to the judge in the latter capacity.
The first objection urged to the constitutionality of the act is that the language of the enacting clause is, “Be it enacted by the General Assembly that,” etc., instead of “Be it enacted by the General Assembly of the state of Louisiana,” etc., the precise words of article 22 of the Constitution.
The act referred to is found published among the acts of the General Assembly of 1902 as Act No. 34, certified to by the Secretary of State of the state of Louisiana. It is signed by the Speaker of the House of Representatives, the Lieutenant Governor and President of the Senate, and the Governor of the state of Louisiana, and approved by the latter on June 19, 1902. This same objection was urged in State v. Harris, 45 La. Ann. 842, 13 South. 199, 40 Am. St. Rep. 259, and State v. Collins, 47 La. Ann. 578, 17 South. 128; and, although the necessities of those cases did not require an absolute decision upon it, this court, in referring to it, stated that the omission in the statute consisted only in leaving out the words “of the state of Louisiana”; that “there remained the substance of the enacting words required by the Constitution.”
We think we would be sacrificing substance to mere form, were we to sustain this objection.
Article 21 of the Constitution declares that “the legislative power of the state” shall be vested in the “General Assembly.”
When we find among the published statutes of the state an act reciting that it was enacted by the General Assembly, authenticated as this act is, we cannot possibly reach any other conclusion than that the General Assembly referred to is that of the state of Louisiana. Adams v. Lewis, 7 Mart. (N. S.) 402; Lallande v. Terrill, 12 La. 7.
Act No. 34, p. 42, of 1902, is not violative of article 155 of the Constitution. That article directs the General Assembly to grade all misdemeanors and minor offenses against the state, and to fix the minimum and maximum penalties therefor. No attempt has been m¿de by the General Assembly to make a general classification of misdemeanors and minor offenses under this article. By act No. 107, p. 161, of 1902, approved July 7, 1902, it made a partial classification of particular classes of misdemeanors and minor offenses. Act No. 34, p. 42, of 1902 had at that time been adopted and approved. The punishment affixed by the statute for its *1094 •violation was a fine not exceeding $100, or imprisonment in the parish prison not ex■ceeding one year, or both. The minimum penalty as to the fine is the least amount of money recognized by law. The minimum .as to the imprisonment is the least recognized subdivision of time. The maximum fine was fixed at $100, and the maximum imprisonment one year. The lower and the upper limit of punishment are both fixed, with a discretionary power conferred upon the judge to fix the punishment to be applied in any particular ease according to its facts, from a mere nominal fine up to, but not beyond, $100, and the imprisonment from a mere nominal imprisonment up to, but not be.yond, one year in the parish prison. We find nothing in the Constitution prohibiting the Legislature from leaving to the trial judge this discretionary power of fixing the punishment between declared limits. We find •nothing uncertain, indefinite, and not susceptible of execution in the punishment imposed for the violation of the statute.
We have been pointed out nothing in the •Constitution which would withdraw from the General Assembly'the power and authority of constituting as a misdemeanor the de•sertion by a husband of his wife without just cause, or the willful neglect of a father •or husband to provide for the support of his wife and children who are in destitute or necessitous circumstances, which would make ■the performance by a husband and father of his duties towards his wife and children “essentially matters of a civil character, at most .a quasi offense, which can only be judicially inquired into, determined, and executed by civil process in a court of civil jurisdiction.” The performance by a husband and father ■of the legal duties which he voluntarily assumed in contracting marriage is a matter which not only affects the particular parties in interest, but the public at large, as affecting the general public welfare. The state, itself is deeply interested in upholding and seeing enforced the rights and obligations springing from the family relations, for up■on their being upheld and enforced rest the well-being of society itself. The statute we are considering has for its object the effective correction of any mistaken idea which particular men may have on this subject.
The. complaints which appellant urges against the provisions of the law which are included in the terms of its proviso are matters which are entirely in the interest of the parties accused, and are controlled by their own consent being given to the same.
We do not think the defendant has any legal interest in contesting the constitutionality of the statute on this ground — certainly not at the present time and under present circumstances. The questions raised herein are to some extent met and covered by the decision of this court in State v. Pearson (recently decided) 34 South. 575, ante, p. 387.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and that the demurrer filed by.the defendant, in so far as it attacked the constitutionality of Act No. 34, p. 42, of 1902, be, and the same is, overruled, as not well founded; that the affidavit and cause be reinstated; and the same is hereby remanded to be proceeded with according to law.