SOMMER'VILLE, J.
Defendant was charged with retailing liquors in the parish of Caddo, without previously' obtaining a license therefor, under the provisions of Revised Statutes, § 910, as amended by Acts No. 83 of 1886, p. 122, and No. 66 of 1902, p. 93. He was convicted and sentenced; and he appeals.
Defendant demurred to the indictment, alleging that he committed no crime or offense known to the laws of the state of Louisiana, and that it, the indictment, was defective and insufficient in attempting to charge him with an offense. It is argued in support of the demurrer that the indictment should have charged further that the parish of Caddo was prohibition, or “dry,” territory. The state offered evidence to prove that Caddo parish was a prohibition, or “dry,” parish. Objection was made to the evidence, and the-objection was overruled. The same point is made in a motion for a new trial. A motion in arrest of judgment was based on the same ground, and it was overruled. Bills of exceptions were reserved.
[1,2] The indictment follows the exact language of Act No. 60 of 1902, p. 93. And, as the language of the statute was followed, the indictment is sufficient.
Section 910, Revised Statutes, was the only statute which declared the selling of liquors without previously obtaining a license to do so to be a misdemeanor, punishable, by a certain fine or imprisonment, until the year 1886, when the section was amended, in so far as to leave the punishment, in default of the payment of the fine imposed, to the discretion of the court. The section was further amended in 1902. It, the section, and the statutes, Nos. 83 of 1886 and 66 of 1902, continued to be the law, applicable alike to “wet” and “dry” parishes, until Act 107 of 1902 was passed. State ex rel. Jefferson v. Gray, 111 La. 852, 35 South. 952; State v. Hageman, 123 La. 802, 49 South. 530; State v. Bailey, 124 La. 152, 49 South. 1011.
Subsequent to the passage of Act No. 66 in 1902, the same Legislature passed Act No. 107, p. 161, where, in section 8, provision was specially made for the misdemeanor of selling liquors without having previously obtained a license in “wet” parishes, with a somewhat different penalty from that provided for such selling of liquors in a dry parish. This last section (8) was afterwards changed by sections 3 and 14 of Act No. 176 of 1908, p. 236, so as to make the penalty for retailing liquors without obtaining a license in “wet” parishes the same as that provided for “dry” parishes in Act 66 of 1902.
Thus Act No. 66, p. 93, of 1902, is the law with reference to the selling of liquors without a license in “dry” parishes, cities, and towns; and section 3 of Act No. 176 of 1908, p. 238, is the law with reference to selling liquors without a license in “wet” parishes, or other “wet” localities.
The retailing of liquors without a license, referred to in Act No. 66, p. 93, of 1902, is a substantive crime, one separate and distinct from that denounced in Act No. 176 of 1908. The crime denounced in both statutes is that of retailing liquors without a license. And the penalty, upon conviction, is a fine of not less than $100 or more than $500, or imprisonment.
Under both statutes, the offense is complete by selling liquors without a license.
The indictment in the case fully applies, with reasonable certainty, to the nature of the accusation against the defendant; and the *175 judgment in the ease would be a complete bar to any subsequent prosecution for the same offense. The wrongful act complained of was the selling of liquor without first having obtained a license, and it was alleged in the indictment. A reading of the statutes under consideration does not convey to the mind an intent on the part of the Legislature to consider the offense of selling liquors without a license to be aggravated by the fact that such selling took place in a prohibition parish.
It is immaterial whether the defendant could or could not obtain a license from the authorities of Caddo parish. If he sold without a license, the indictment, and the evidence thereunder, were sufficient. Whether defendant failed to obtain a license, or was unable to get one, is a matter of evidence for the jury. The selling of the liquor without previously obtaining a license was the means by which defendant effected the crime of retailing liquors without a license, and it was therefore unnecessary for the state to charge in the indictment the nature of the evidence upon which it depended for a conviction of defendant. But offering evidence to show that Caddo parish was a “dry” parish, and that defendant could not and did not obtain a license for retailing liquors from the parochial authorities, was responsive to the charge in the indictment that defendant sold liquors without paying a license to said authorities. The evidence was competent.
The prosecutor had the right to elect under which statute he would proceed; and the defendant had the right to force him to elect. And, where a defendant did not ask to have the prosecutor elect before the trial, he admitted that he had suffered nothing of which he might complain. The record may not show an occasion for election until evidence was being offered; and a motion to compel the election then would have been in time. Defendant opened his defense without having asked that the prosecution should elect.
As was said in the case of State v. Tullos, 135 La. 640, 65 South. 870:
“It is obvious that an offense is charged, as intoxicating liquors cannot be sold in a ‘wet’ parish without a license, and no license can issue in a ‘dry’ parish. The charge may have been double, as it did not appear whether the prosecution was under Act No. 66 or Act No. 107 of 1902.
“Defendant’s remedy was by motion to elect. State v. Clement, 42 La. Ann. 583, 7 South. 685.
“The prosecution did practically elect by proving that the venue of the offense was in the prohibition parish of Caddo.”
The next bill of exceptions is taken to the ruling of the court denying the demands of defendant for trial by jury. The ruling was correct. A jury is not necessary on the trial of the criminal misdemeanor charged in the indictment.
[3] The next bill of exceptions is taken to the refusal of a new trial; one of the grounds being that the court was not properly organized, in that the judge had illegally and unauthorizedly appointed a deputy clerk as successor to the clerk of court, the clerk having died. The judge, in appointing a successor to the deceased clerk, acted under article 124 of the Constitution of 1913, which gives him the right to make an appointment in such case. It is argued that the action of the constitutional convention in adopting article 124 acted contrary to the terms of Act No. 1, Second Extra Session of 1913, which called the convention into existence.
The objection, made in the motion for a new trial.and also in arrest of judgment, was made too late to be considered by the court. State v. Dreifus, 38 La. Ann. 877; State v. Baudoin, 115 La. 773, 40 South. 42.
The ruling of the district judge, that a collateral attack cannot be made upon the title of a clerk of court to his office, follows the decision in State v. Sadler, 51 La. Ann. 1397, 26 South. 390. The judgment in that case was reversed on rehearing, but on another *177 point at issue in the cause. The ruling on this particular point was in line with that of the Supreme Court of the United States in Cocke v. Halsey, 16 Pet. 71, 10 L. Ed. 891, and many other authorities mentioned in the opinion in the Sadler Case.
Judgment affirmed.